IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

JESSICA G.,[1]

      Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

Case No. 2:22-cv-01701-HL

**OPINION AND ORDER**

_____

HALLMAN, United States Magistrate Judge:

    Plaintiff Jessica G. brings this action under the Social Security Act (the "Act"), 42 U.S.C.

§ 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied Plaintiff's applications for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Act. 42 U.S.C.

§ 401 *et seq.* For the following reasons, the decision of the Commissioner is REVERSED and

REMANDED for further proceedings consistent with this Opinion and Order.

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

I.   **Plaintiff's Application**

Plaintiff alleges disability based on post-traumatic stress disorder ("PTSD"), bipolar disorder, attention-deficit/hyperactivity disorder ("ADHD"), Sjogren's syndrome, obesity, anxiety, neuropathy, tardive dyskinesia, hypothyroidism, and osteoarthritis Tr. 135, 143. At the

time of her alleged onset date, she was 47 years old. *Id.* She has completed high school. Tr. 24. She has past relevant work as an administrative clerk, general clerk, cashier checker, fast food worker, and pizza baker. *Id.*

Plaintiff previously filed an application for SSI under Title II of the Act. Tr. 183. ALJ Katherine Weatherly issued a decision on December 27, 2019, finding Plaintiff was disabled from April 1, 2017, to May 30, 2019. Tr. 195. The ALJ found that Plaintiff's impairments significantly improved after May 31, 2019, but limited her to performing only simple, routine, repetitive tasks. *Id.* The ALJ did not include any exertional limitations in Plaintiff's RFC. *Id.*

Plaintiff protectively applied for DIB and SSI on July 16, 2020, alleging an onset date of February 15, 2020. Tr. 135, 143. Her applications were denied initially on November 30, 2020, and on reconsideration on February 12, 2021. Tr. 142, 150, 164, 175. Plaintiff subsequently requested a hearing, which was held on May 26, 2022, before Administrative Law Judge ("ALJ") Steven De Monbreum. Tr. 35. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 37-63. A vocational expert ("VE"), Francene Geers, also testified. Tr. 56-63. On July 27, 2022, the ALJ issued a decision denying Plaintiff's claim. Tr. 26. Plaintiff requested the Appeals Council to review ALJ De Monbreum's decision, which was denied on September 6, 2022. Tr. 1-6. Plaintiff then sought review before this Court.[2]

## II.    Sequential Disability Process

When adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing non-disability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption. A claimant may

---

[2] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 24).

rebut the presumption by showing a "changed circumstance" affecting the issue of disability with respect to the unadjudicated period, e.g., a change in the claimant's age category under 20 CFR 404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability. *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the

claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

The ALJ stated that Plaintiff's testimony "highlighted new problems faced by the claimant as of the alleged onset date." Tr. 12. He then found that Plaintiff had "satisfied the requirement to rebut the presumption of disability by alleged the existence of impairments not previously considered." *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 15.

At step two, the ALJ determined that Plaintiff has the following severe impairments: "obesity; Sjogren's syndrome; osteoarthritis; bipolar disorder; attention-deficit hyperactivity disorder; posttraumatic stress disorder; and history of substance abuse." Tr. 16.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id.* The ALJ then resolved that Plaintiff had the RFC to do light work with the following limitations:

> She can frequently climb ramps and stairs, but can only occasionally climb ladders, ropes, or scaffolds. She is limited to simple, routine job tasks. She can only occasionally interact with the public, co-workers, and supervisors.

Tr. 18.

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. Tr. 24.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a router, routing clerk, and marker II. Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 25-26.

## DISCUSSION

Plaintiff argues that the ALJ committed three errors: (1) improperly addressing critical aspects of the medical opinion evidence; (2) failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony; and (3) failing to provide clear and convincing reasons to reject the lay witness' testimony.

## I.    Medical Opinion Evidence

Plaintiff first asserts that the ALJ improperly addressed critical aspects of the medical opinions given by Dr. William Trueblood, M.D., and Kiley Gilbert, PMHNP-BC, without providing legally adequate reasons for doing so. Pl.'s Opening Br. 6.

### A.    Standard of review

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at \*5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but

instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new

regulations eliminate the hierarchy of medical opinions and state that the agency does not defer

to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v.*

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly

irreconcilable with our caselaw according special deference to the opinions of treating and

examining physicians on account of their relationship with the claimant."). Under the new

regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions

in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is

determined by whether the medical source presents explanations and objective medical evidence

to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the

opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking

at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the

claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3).

An ALJ is not, however, required to explain how she considered those secondary medical factors

unless she finds that two or more medical opinions about the same issue are equally well-

supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical

opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §

404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has

the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even

under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as

unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### B.   Dr. William Trueblood, Ph.D.

Dr. Trueblood conducted a neuropsychological examination on December 13, 2021. Tr. 1529. Based on these test results, Dr. Trueblood opined that Plaintiff showed mild weakness in learning and memory, but substantial executive weaknesses. Tr. 1530. Specifically, Dr. Trueblood opined that Plaintiff had substantial executive functioning impairments in the areas of concentration, emotional regulation, working memory, and planning and organization. *Id.* Dr. Trueblood also completed a mental RFC assessment and opined that Plaintiff would have marked limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, maintain regular attendance and be punctual, and perform activities within a schedule. Tr. 1525. Dr. Trueblood opined that Plaintiff would have marked limitations in accepting instructions, responding appropriately to criticism from supervisors, getting along with coworker or peers without distracting them or exhibiting behavioral extremes, responding appropriately to changes in the work setting, and tolerating normal levels of stress. Tr. 1526-27. Dr. Trueblood further opined that Plaintiff would not be able to complete a normal workday or work week without interruptions from her mental impairments, and that she would likely miss about four days of work each month due to her impairments. *Id.*

The ALJ found Dr. Trueblood's opinion unpersuasive. Tr. 20. The ALJ stated Dr. Trueblood's opinion was inconsistent with the agency psychological consultants' findings, the testimony from the medical expert ("ME"), and Plaintiff's performance at her part-time job. *Id.* This Court finds that the ALJ's reasoning for discrediting Dr. Trueblood's opinion was not supported by substantial evidence.

When discussing the inconsistencies between the agency psychological consultants' findings, the ME's testimony, and Dr. Trueblood's findings, the ALJ failed to specify what parts of the medical opinions were inconsistent with each other; instead, he concluded they were generally inconsistent. Tr. 20 (finding that "Dr. Trueblood's opinion is inconsistent with findings from the [ME] and the findings of both prior State agency psychological consultants" without further explanation). The ALJ cannot reject Dr. Trueblood's opinion on the basis of its inconsistency with other opinions "without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. While there are some obvious inconsistencies between these opinions, it is not the role of this Court to supply the reasoning for the ALJ. Accordingly, the ALJ erred in rejecting Dr. Trueblood's opinion on the basis that it was inconsistent with other medical opinions.

The ALJ also found Dr. Trueblood's opinion unreliable given that Dr. Trueblood stated testing observations "were less firm and precise than usual due to abnormal testing conditions due to COVID." Tr. 21, 1529. When describing the testing conditions, Dr. Trueblood explained that he conducted the examination in a separate room from Plaintiff, "with a window between the rooms so that [they] could see each other, and auditory communication was via doxy.me." Tr. 1529. However, Dr. Trueblood indicated at the forefront of his evaluation that Plaintiff's test results were still valid. *Id.* Therefore, this potential decrease in precision is not substantial evidence to discredit Dr. Trueblood's opinion entirely.

Finally, the ALJ found Dr. Trueblood's opinion inconsistent with Plaintiff's "level of success at her part-time job" at Best Western hotel. Tr. 20. To support this contention, the ALJ relied heavily on a questionnaire completed by Plaintiff's employer in 2021 ("2021

questionnaire"). Tr. 20. However, the ALJ greatly mischaracterized the record when discussing the 2021 questionnaire at multiple points throughout his decision.

Plaintiff's employer completed the 2021 questionnaire on January 14, 2021, describing Plaintiff's performance at Best Western hotel. Tr. 531-34. The 2021 questionnaire was completed after Plaintiff had worked at Best Western for only two months. Tr. 531. Plaintiff's employer, Jen Clark, indicated that Plaintiff worked eight-hour shifts twice a week as a Front Desk Agent. *Id.* Plaintiff's job duties included answering the phone, taking reservations, and checking guests in. *Id.* Ms. Clark stated that Plaintiff's attendance and punctuality was "excellent," and that she interacts "great" with supervisors, coworkers, and the public. Tr. 32.

Plaintiff's counsel interviewed Ms. Clark on April 26, 2022 ("2022 interview"), after Plaintiff had been working at Best Western hotel for a year. Tr. 590-92. The 2022 interview more accurately reflects Plaintiff's work behavior, as her employer gave more substance to her answers, given that she worked with Plaintiff for a more significant amount of time. *Id.* Ms. Clark stated that Plaintiff leaves early from work about two days per month, which is significant given that she only works eight days per month. Tr. 592. Ms. Clark emphasized that when she sees Plaintiff coming in for work, she very rarely has "full confidence that [Plaintiff] will finish her shift." Tr. 590. Ms. Clark also explained that Plaintiff "is great with the guests and a great worker, but she is not an employee that you can depend upon . . ." Tr. 591. Ms. Clark stated that she "can tell that [Plaintiff] gets overwhelmed really easily" and that "she can get really snippy at times. . ." because "she has so much anxiety." *Id.* Ms. Clark also indicated that she often must "bend the rules for [Plaintiff]" because she cannot complete job tasks following company procedure due to her anxiety. Tr. 592. Ms. Clark described an incident where Plaintiff got so overwhelmed in her role, that she had to come in while she was off shift. Tr. 591. She further

explained that this was "during the time [she] didn't really know what was going on with [Plaintiff]. . ." *Id.* This suggests that Ms. Clark was unaware of Plaintiff's conditions when she completed the 2021 questionnaire, given that the questionnaire was completed before this incident. Lastly, Ms. Clark stated that she "cannot imagine what would happen if [Plaintiff] were scheduled for any more than [two] days," and that she "would never say that [Plaintiff could hold down [forty] hours a week." *Id.*

Here, the ALJ indicated that the limitations opined by Dr. Trueblood were inconsistent with Plaintiff's ability to "meet quality production standards, [get] along well with others in the workplace, [respond] appropriately to criticism." Tr. 21. The ALJ cites to the 2021 questionnaire to support his conclusion, stating that Plaintiff's employer expressed that she performed well in her role at the front desk. *Id.* The ALJ also explained that "if third-party reports provide a more accurate picture of the claimant's executive functioning than objective testing as Dr. Trueblood asserts, then the report of claimant's employer would appear to undercut his opinion per the employer's description of claimant's job performance." *Id.* However, this is not substantial evidence, being that the later 2022 interview demonstrates that Plaintiff does not perform well in her job. Tr. 590-92. Thus, the ALJ greatly mischaracterized the record when discounting Dr. Trueblood's opinion. *See Reddick v. Chater,* 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding).

In sum, the none of the ALJ's proffered reasoning for discrediting Dr. Trueblood's opinions were supported by substantial evidence.

### C.    Kiley Gilbert, PMHNP-BC

Plaintiff's treating psychiatric mental health nurse practitioner, PMHNP Kiley Gilbert, completed a statement on June 23, 2021. Tr. 1485-88. NP Gilbert opined Plaintiff would be

markedly limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and tolerate normal levels of stress. Tr. 1486, 1488. She also opined that Plaintiff would be moderately limited in her ability to perform activities within a schedule, maintain regular attendance and be punctual, and work in coordination with or proximity to others. 1486-87. Lastly, NP Gilbert opined Plaintiff's mental impairments would substantially interfere with her ability to work at least twenty percent of the time and that she would miss about two days of work each month due to her impairments. Tr. 1488.

The ALJ found NP Gilbert's opinion unpersuasive. Tr. 22. The ALJ explained that the opinion is "not persuasive for the same reasons Dr. Trueblood's opinion is not persuasive with regard to inconsistency with the record as a whole." *Id.* As explained above, this Court finds that the ALJ did not provide valid reasons supported by substantial evidence when discrediting Dr. Trueblood's opinion. For those same reasons, the ALJ's finding that NP Gilbert's opinion was unpersuasive was not supported by substantial evidence.

Additionally, the ALJ determined that NP Gilbert's opinion "rest[s] on shaky support" given that Ms. Gilbert admitted "it was difficult to fully assess the claimant's condition due to the short treating relationship, as she had only seen the claimant twice at the time this opinion was offered." *Id.* This was not a valid additional reason to discredit Gilbert's opinion, especially considering the ALJ found the state agency psychologists' opinions persuasive, and they treated Plaintiff even less, and they did not have Dr. Trueblood's neuropsychological examination as part of their record to review.

Thus, the none of the ALJ's proffered reasoning for discrediting NP Gilbert's opinions were supported by substantial evidence.

## II.    Subjective Symptom Testimony

Plaintiff next asserts that the ALJ failed to provide clear and convincing reasons to reject her symptom testimony that she could not work full-time due to her mental impairments. Pl.'s Reply Br. 5-7. Specifically, Plaintiff contends that her improvement with treatment, work activity, and the objective medical evidence do not provide a proper basis for discounting her testimony. *Id*. This Court agrees.

### A.    Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id*.

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)*.* In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.     Plaintiff's Testimony

At the hearing, Plaintiff testified that when she tried to go back to work after her previous closed period of disability ended, she had a part-time job at Pizza Hut. Tr. 41. She started working at Pizza Hut in October 2019, and was let go after six weeks because she became overwhelmed and was unable to keep up with the job. Tr. 41, 154-156. Plaintiff explained that she was not able to multitask quickly, was easily overwhelmed, had crying spells, and had to take multiple breaks. Tr. 43. She testified that in August 2020, she was hospitalized for suicidal ideation. Tr. 52-53. Plaintiff then started working part-time at Best Western hotel in November 2020. Tr. 568. She explained that when she tried to work extra shifts in the past, her bipolar disorder symptoms including hypomania and sleep disturbance would get worse, so she stopped working extra shifts. Tr. 45-46. Plaintiff also indicated that about once a month, she leaves work early due to her symptoms, and she sometimes cannot even work her scheduled two days in a row due to her bipolar disorder flares. Tr. 48-49. Plaintiff testified that she gets irritable with guests, has crying spells, makes mistakes, and must take breaks. Tr. 47. Plaintiff explained that her mental limitations wax and wane, and that on some days she can manage her activities of daily living and other days she cannot. Tr. 54. She stated that repetitive, monotonous activities

make her mental health symptoms worse. Tr. 55. Plaintiff did not believe she would be able to sustain full-time work because she needs extra days off to deal with her mental health. Tr. 56.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19. Specifically, the ALJ discussed Plaintiff's improvement with treatment, work history, and the objective medical evidence when discounting her subjective symptom testimony. Tr. 19-23. This Court addresses each rationale in turn.

### C.    Improvement With Treatment

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Here, the ALJ concluded that Plaintiff's conditions improved with treatment which undermined her hearing testimony where she stated that her symptoms worsened in early 2020 to the point that she was no longer capable of working fulltime. Tr. 19-20. As noted above, an ALJ should consider the type and effectiveness of treatment in weighing the claimant's allegations. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). The ALJ stated that "while her symptoms were temporarily exacerbated in 2020 due to contemporaneous stressors, this level of limitation was not long term." Tr. 19. The ALJ explained that it "appear[s] that [Plaintiff] was having increased issues

after she and her husband moved" into an "off the grid cabin" where she felt very isolated and had no running utilities, and "then she applied for benefits as symptoms increased and peaked in August 2020 with suicide ideation." Tr. 20 (citing Tr. 888, 939, 1021). Without citations to the record, the ALJ stated "ongoing treatment notes seem to show she has stabilized again. . ." with "notable improvement in reported symptoms after a brief period in 2020" and that Plaintiff "was reporting by early 2021 that she felt her medication was effective in addressing her bipolar symptoms. Tr. 20. While the ALJ acknowledged that Plaintiff continues to report some fluctuation in mood, and her PHQ-9 and GAD7 screenings are typically elevated in later treatment notes, the ALJ found nonetheless, that "the objective findings on examination have been largely normal in recent progress notes, reflecting that [Plaintiff] has a normal appearance, adequate hygiene [and] grooming, normal speech, normal insight [and] judgment, and even good focus and intact cognition and memory have been noted, but she may also present with abnormal mood and affect. Tr. 20 (citing Tr. 1493, 1688, 1693, 1707, 1710).

The ALJ greatly mischaracterized the record when discussing Plaintiff's improvement with treatment. The ALJ failed to explain how Plaintiff's ability to present to appointments with "adequate hygiene and grooming" and "normal speech" demonstrates that she can work full-time. Additionally, these same records that demonstrate Plaintiff was able to present with "adequate hygiene" also show that Plaintiff's mental health impairments did not improve to the level at which the ALJ indicates. For example, a treatment note from June 2021 indicates that Plaintiff was having episodes of hypomania, getting irritable at times "to things anyone would but [her] reaction is more extreme than others," and was having more "memory issues lately [and] not following through with tasks." Tr. 1493. The ALJ also cited to purely physical examinations to indicate that Plaintiff's mental health had improved, taking Plaintiff's ability to

present well at appointments out of context. Tr. 20 (citing Tr. 1688, 1693). The ALJ cited to a treatment note in March 2022, but this same treatment note indicates that Plaintiff was having an increase in anxiety attacks and was having severe adverse side effects from her medications. Tr. 20, 1706-07. This treatment note also indicates that Plaintiff was experiencing serious deficits in executive function. Tr. 1712. Therefore, the ALJ's reliance on Plaintiff's alleged improvement with treatment to reject her symptom testimony was not supported by substantial evidence.

### D.    Work History

With respect to Plaintiff's part-time employment at Best Western Hotel, the ALJ failed to connect Plaintiff's part-time work as a Front Desk Agent with her ability to work full-time. Plaintiff provided specific and detailed testimony as to why she was only able to work two days a week due to her bipolar disorder, ADHD, and PTSD. Tr. 48-50. She specifically testified that when she tried to work extra shifts in the past, her bipolar disorder symptoms including hypomania and sleep disturbance would get worse. Tr. 45-46. While the ALJ may "consider any work activity, including part-time work, in determining whether a claimant is disabled," *Ford v. Saul*, 950 F.3d 1151, 1156 (9th Cir. 2020), the ALJ must still connect Plaintiff's ability to work part-time with a specific basis for rejecting her testimony. He failed to do so here. The ALJ's reliance on Plaintiff's part-time employment to reject her symptom testimony was therefore not supported by substantial evidence.

### E.    Objective Medical Evidence

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that

basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); see also 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ's analysis of the objective medical evidence coincided with his analysis of Plaintiff's alleged improvement with treatment. The ALJ discussed that during her mental health treatment after her psychiatric hospitalization, examiners routinely found Plaintiff exhibited adequate hygiene, good eye contact, intact memory, and normal judgment. Tr. 20. For the same reasons discussed above, this Court finds the ALJ's analysis of the objective medical evidence was mischaracterized and not supported by substantial evidence.

In sum, the ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

### III.   Lay Witness Testimony

Lastly, Plaintiff contends that the ALJ improperly discounted lay witness testimony from her husband and employer, Pl.'s Opening Br. 13-16, which was contrary to the standard that an ALJ must provide "germane" reasons for discounting lay witness testimony. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Court agrees.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ

validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Here, the ALJ discounted the lay witness testimony for the same reasons he discounted Plaintiff's subjective symptom testimony. The ALJ explained that the testimony was generally consistent with Plaintiff's self-reports, however, "as with the claimant's testimony, the alleged severity of symptoms in these reports is inconsistent with the testimony from Dr. Toews," a state agency psychological consultant. Tr. 22-23. The ALJ also stated that Plaintiff's husband's testimony was inconsistent with the "positive report from the claimant's current employer." Tr. 23 (citing Tr. 531-34). However, to support this contention, the ALJ relied heavily on the 2021 questionnaire rather than the 2022 interview. *Id.* The ALJ did briefly mention that the interview with Plaintiff's employer, Ms. Clark, was also considered and acknowledged that it suggests Plaintiff's performance in her role is subpar. Tr. 23. The ALJ also acknowledged that Plaintiff gets "snippy" at times and therefore he reduced her coworker interaction from what was found by the state agency psychological consultants. *Id.* However, the ALJ stated that the interview must be "considered in light of the previous statement from this employer in which she gave the claimant a glowing report with no mention of limitations." *Id.* Again, the ALJ relied on this 2021 questionnaire too heavily especially given that it was conducted only two months into Plaintiff's employment totally no more than eight shifts.

The Commissioner asserts that this error is harmless because the reports largely mirrored Plaintiff's testimony and the ALJ provided legally valid reasons supported by substantial evidence to reject Plaintiff's symptom allegations. Def.'s Br. 19-23. This Court agrees that the

reports largely mirrored Plaintiff's testimony; however, because the ALJ's rejection of plaintiff's symptom testimony was not supported by substantial evidence, this Court cannot conclude that the error was harmless.

## IV.    ALJ's Hypothetical to VE

Plaintiff's final assignment of error is that the ALJ did not include all of Plaintiff's impairments when posing hypothetical questions to the vocational expert. Pl.'s Opening Brief. 16. This Court agrees.

An ALJ's depiction of a claimant's impairments must be "accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). In order to have sufficient evidentiary value, the dispositive hypothetical question posed to the VE must include all of the limitations which are supported by substantial evidence in the record, and which the ALJ has explicitly "accepted," usually as set forth in the RFC. *Cooper v. Sullivan*, 880 F.2d 1152,1158 n.13 (9th Cir. 1989); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); see also *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). An ALJ's hypothetical questions to the VE need not include limitations which the ALJ has found to be non-credible or accorded diminished evidentiary weight (as to claimant testimony or medical opinion evidence), so long as the ALJ makes specific findings explaining why the limitations were not probative, and therefore omitted. *Stubbs-Danielson*, 539 F.3d at 1174 (citing *Batson Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-96 (9th Cir. 2004)).

In this case, the ALJ improperly omitted the mental impairments described by the lay witnesses and assessed by Dr. Trueblood and NP Gilbert. The ALJ's hypothetical did include mental limitations including being limited to simple routine tasks and only occasional interaction

with the public, coworkers, and supervisors, however these limitations do not account for the marked and moderate mental limitations assessed by Dr. Trueblood and NP Gilbert. Tr. 59-60. Although the ALJ was not required to include limitations that were not supported by substantial evidence in the RFC, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), in this case, the Court has concluded that the ALJ's rejection of the evidence in support of those limitations was not supported by substantial evidence. Accordingly, the ALJ's omission of those impairments was in error.

## IV.    Remedy

Plaintiff asserts that this case should be remanded for immediate payment of benefits under the credit-as-true standard. Pl.'s Reply Br. 11. Applying the requisite standard, for the reasons set forth below, the Court finds that the record is not free of conflict and ambiguity and therefore must be remanded for further proceedings.

### A.    Legal Standard

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Generally, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," the district court should remand for payment of benefits. *Garrison*, 759 F.3d at 1020.

In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and whether there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the court can exercise its discretion to remand for an award of benefits. *Id.*

Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (internal quotations and citation omitted).

**B.      Analysis**

On the first prong, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler,* 775 F.3d at 1101 (internal quotations and citations omitted).

As discussed above, the ALJ committed harmful legal error by failing to properly evaluate testimony from Plaintiff and the lay witnesses, and the medical opinion evidence. Further proceedings would nonetheless be useful regarding the extent of Plaintiff's allegedly disabling impairments, such that crediting the wrongfully rejected evidence as true and/or remanding for the immediate payment of benefits is improper.

On one hand, it is undisputed that Plaintiff's mental health impairments are longstanding and have persisted at significant levels since the alleged onset date. On the other hand, Plaintiff worked part-time with these impairments, in a job that with less limitations than her designated RFC. Tr. 18, 431-34. Therefore, it is unclear exactly how debilitating her mental impairments are, and if she would be able to work in a job that is less demanding than her current role at Best Western Hotel. While the ALJ discussed how Plaintiff's work history made her allegations less compelling, as discussed previously, ALJ failed to support this contention with substantial evidence and greatly mischaracterized the record. The ME's testimony also differs drastically from the opinions of Dr. Trueblood's and Ms. Gilbert who gave their opinions in December 2021 and June 2021, respectively. Tr. 1485-88, 1529. In April 2022, the ME opined that Plaintiff has no more than mild mental health limitations; meanwhile, Dr. Trueblood and Ms. Gilbert opined a series of marked and moderate mental limitations. Tr. 76-77, 1485-88, 1524-30. Therefore, it is unclear exactly how much her mental health has changed in this time period. Tr. 450, 516.

In light of the lack of a fully developed and unambiguous record, the Court will not credit the discounted testimony as true, and will instead remand to the Commissioner for further proceedings. On remand, the ALJ must (1) accept Dr. Trueblood's and Ms. Gilbert's opinions or provide legally sufficient reasons for rejecting them, (2) accept Plaintiff's testimony or provide legally sufficient reasons for rejecting it, (3) accept the lay witness statements or provide legally sufficient reasons for rejecting them, (4) review any new evidence, and (5) as necessary, reweigh the medical and other evidence of record, reformulate Plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 16th day of April, 2024.

_____
ANDREW HALLMAN
United States Magistrate Judge